EUGENE DEROCHEMONT, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Derochemont v. Commissioner
Docket No. 9134-82
United States Tax Court
T.C. Memo 1991-600; 1991 Tax Ct. Memo LEXIS 636; 62 T.C.M. (CCH) 1384; T.C.M. (RIA) 91600; December 4, 1991, Filed *636 Decision will be entered under Rule 155. Eugene deRochemont, pro se. Alan S. Kline, for respondent. BEGHE, Judge. BEGHE
MEMORANDUM FINDINGS OF FACT AND OPINION Respondent determined a deficiency in petitioner's Federal income tax for 1978 in the amount of $ 44,621, plus an addition to tax under section 6653(a)[1] in the amount of $ 2,231. After concessions by respondent, the issues for decision are: (1) Whether petitioner realized short-term capital gain in the amount of $ 75,998 (or some lesser amount) on his sales of two apartment buildings, or whether, as petitioner asserts, he realized no gain on these sales because he was acting as agent for the actual sellers; (2) whether petitioner, as a head of household with two dependent children, is entitled to a credit of $ 800 under section 44A for child care expenses; and
*637 (3) whether petitioner is liable for an addition to tax for negligence or intentional disregard of rules and regulations under section 6653(a). FINDINGS OF FACT Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference. Petitioner's legal residence, at the time of filing his petition, was Harrisburg, Pennsylvania. Petitioner resided in Los Angeles, California, at the time of trial. Until their divorce in January 1977, petitioner was married to Camille E. deRochemont, also known as Mirta Camille Erice (Camille), the daughter of Michael and Mary Erice and sister of Robert Erice. Karen Elizabeth and Eugene, Jr., are the children of this marriage. On July 1, 1971, petitioner, Camille, and Michael Erice entered an agreement whereby Michael Erice leased an apartment building located at 439 South High Street, West Chester, Pennsylvania, to petitioner and Camille for a term of 10 years at a rental of $ 200 per month, with a right to assign and sublet. The lease also stated, If the Lessee shall hold over after the expiration of the term hereby created, with the consent of the Lessor it shall be deemed *638 and taken to be a renewal of this Lease, and of all the terms, conditions, covenants and provisos therein contained, for the term of another TEN YEARS and so on from YEAR to YEAR until either party shall give ninty [sic] days previous notice to the other of an intention to determine the tenancy at the end of any ten year period.
The lease further gave petitioner and Camille an option to buy the property for $ 15,500 prior to 1981, and an option to buy the property thereafter and prior to 1991 for $ 5,000. On November 1, 1971, Michael Erice leased an apartment building located at 227 West Union Street, West Chester, Pennsylvania, to petitioner "and/or Robert Erice" on the same terms and with an option to purchase on the same terms as applied to the South High Street apartment building. Robert Erice exercised the option to purchase the West Union Street apartment building on February 24, 1976. Under these leases petitioner managed the apartment buildings and sublet the apartments to third parties, and Robert Erice was responsible for maintenance and repair. By means of an indenture dated June 21, 1977, Michael and Mary Erice, for the recited consideration of $ 1.00, conveyed *639 the apartment building at 439 South High Street to petitioner. This indenture was filed in the Chester County, Pennsylvania, Office of the Recorder of Deeds at 2:33 p.m., February 14, 1978. The back or cover of the conveyance bears the typewritten statement, "I certify that the actual consideration for the within conveyance is $ 20,500," signed by James Stolis (Stolis), a notary public. The statement did not include the imprint of Stolis' notarial seal or other evidence that he signed in his official capacity. Next to the Stolis statement is an imprint, dated February 14, 1978, of the stamp of the Pennsylvania Department of Revenue showing a Realty Transfer Tax of $ 205 and the separate typewritten notation, "MUNICIPAL TRANSFER TAX PAID IN AMOUNT OF $ 205 COLLector," signed by Florence D. Hurst (Hurst). Robert and Lynn P. Erice, by means of an indenture dated June 11, 1977, for the recited consideration of $ 1.00, conveyed the apartment building at 227 West Union Street to petitioner. This indenture was filed in the Chester County Office of the Recorder of Deeds at 2:34 p.m., February 14, 1978. The back or cover of the indenture bears the typed statement, "I hereby certify *640 the precise consideration is $ 22,100," signed by Stolis, but did not bear the imprint of his notarial seal or other evidence that he signed in his official capacity. Next to the Stolis statement is an imprint, dated February 14, 1978, of the stamp of the Pennsylvania Department of Revenue showing a Realty Transfer Tax of $ 221 and the separate notation of the Municipal Transfer Tax Collector, signed by Hurst, showing Municipal Transfer Tax paid of $ 221. Petitioner, by indenture dated February 10, 1978, conveyed the apartment building at 439 South High Street to David S. Shur (Shur) for a stated consideration of $ 39,000. The indenture bears an imprint of the stamp of the Pennsylvania Department of Revenue showing a Realty Transfer Tax of $ 390 and the separate notation of the Municipal Transfer Tax Collector showing as paid a Municipal Transfer Tax of $ 390. The notarial acknowledgment of petitioner's signature on this indenture was taken by Stolis, and the acknowledgment bears the imprint of his notarial seal. The indenture was recorded by the Chester County, Pennsylvania, Recorder of Deeds at 2:34 p.m., February 14, 1978. By indenture also dated February 10, 1978, petitioner *641 conveyed the apartment building at 227 West Union Street to Stanford E. and Nancy D. Snyder (the Snyders) for a stated consideration of $ 37,000. This indenture also bears the notation of the Municipal Transfer Tax Collector showing a $ 370 Municipal Transfer Tax paid, and the back or cover of the indenture bears the imprint of the stamp of the Pennsylvania Department of Revenue and a Realty Transfer Tax of $ 370. Petitioner's signature on this indenture was acknowledged by Stolis, and the acknowledgment bears the imprint of his notarial seal. The indenture was recorded in the Chester County Office of the Recorder of Deeds at 2:36 p.m., February 14, 1978. In 1977, petitioner filed a lawsuit concerning his interests in the two apartment buildings against Michael and Robert Erice. The lawsuit was settled prior to petitioner's conveyances of the two apartment buildings to Shur and the Snyders. Petitioner did not disclose his conveyances of the two apartment buildings in his 1978 Federal income tax return. Neither party to this proceeding produced the Erices' 1977 and 1978 Federal income tax returns. Respondent had destroyed these returns, and petitioner did not produce copies *642 he might have obtained from the Erices, by subpoena duces tecum or otherwise. Petitioner was employed as an accountant working a 9-to-5 schedule during 1978. On March 23, 1978, the Court of Common Pleas of Cumberland County, Pennsylvania, "confirmed and awarded" custody of Karen and Eugene, Jr., both of whom were less than 15 years old at all times during 1978, to petitioner. Karen and Eugene, Jr., were petitioner's dependents, and petitioner was entitled to head of household status during 1978. Petitioner employed Barbara Agee (Agee) of Camp Hill, Pennsylvania, to provide child care during 1978. Agee's responsibilities as petitioner's child care provider included picking up Karen and Eugene, Jr., after school, taking them to her home in Camp Hill, preparing dinner for them, and looking after them until petitioner picked them up after he finished work. Petitioner claimed an $ 800 credit for child care on his 1978 Federal income tax return. ULTIMATE FINDINGS OF FACT The Erices transferred the apartment buildings at 439 South High Street and 227 West Union Street to petitioner in June 1977 in consideration of payments of $ 20,500 and $ 22,100, respectively, by petitioner. Petitioner *643 acted for his own benefit, not as an uncompensated agent for the Erices, in selling the two apartment buildings in 1978. Petitioner, as a result of his 1978 sales of the apartment buildings to Shur and the Snyders, realized short-term gain as follows: 439 S. High St.
227 W. Union St.
Totals
Sales Price
$ 39,000
$ 37,000
$ 76,000
Basis
20,500
22,100
42,600
Short-term gain
$ 18,500
$ 14,900
$ 33,400
Petitioner paid Agee at least $ 4,000 for child care during 1978. OPINION I. Capital Gains
Petitioner contends that he realized no capital gain as a result of his 1978 sales of the two apartment buildings to Shur and the Snyders. He asserts that he acted as the Erices' uncompensated agent in selling the two apartment buildings, and that the two June 1977 indentures conveying the apartment buildings to him for the recited nominal consideration of $ 1.00 each were executed for the sole purpose of giving him the legal authority to sell the apartment buildings on behalf of the Erices. In his amended petition, petitioner also contended that, in settlement of his 1977 lawsuit against the Erices, he transferred his leasehold interests in the two apartment buildings *644 to the Erices for a 100-percent fee interest in a third property in a tax-free like-kind exchange under section 1031(a). Petitioner did not provide documentary evidence or testimony to support this claim at trial, nor did he assert this argument in his brief, and we do not consider it further. Respondent contends that petitioner was not acting as an agent for the Erices when he sold the two apartment buildings in 1978, and that petitioner realized short-term capital gain in the amount of $ 75,998. Respondent argues that the Pennsylvania statute of frauds requires that an agent's authority to sell real estate be in writing, and that petitioner has provided no evidence establishing an agency relationship between the Erices and petitioner. Petitioner bears the burden of proving that respondent's determination is erroneous. Welch v. Helvering, 290 U.S. 111, 78 L. Ed. 212, 54 S. Ct. 8 (1933); Rule 142(a). We are not persuaded by petitioner's argument that he was acting as the Erices' agent when he sold the two apartment buildings. Neither petitioner nor respondent brought to our attention the Stolis statements about actual and precise consideration or the imprints and notations of the transfer *645 tax authorities on the 1977 indenture conveyances to petitioner. [2] In any event, these statements, imprints, and notations are statements in documents affecting an interest in property, and constitute admissible affirmative evidence that petitioner took title to the apartment buildings for his own benefit and was not acting as an agent on behalf of the Erices in these transactions. Fed. R. Evid. 803(15). The PennsylvaniaRealty Transfer Tax excludes from the imposition of the tax transactions "for no or nominal actual consideration between principal and agent or straw party." Pa. Stat. Ann. tit. 72, sec. 8102-C.3(11) (i) (1990). Where the document by which title to real property is acquired fails to set forth that the property was acquired for the benefit of the principal, the PennsylvaniaRealty Transfer Tax law creates a rebuttable *646 presumption that the grantee has taken possession in his individual capacity for his own benefit. Pa. Stat. Ann. tit. 72, sec. 8102-C.3(11)(i) (1990); Sablosky v. Messner, 372 Pa. 47, 92 A.2d 411, 415 (1952). Petitioner offered no witnesses or other evidence to substantiate his testimony that he was acting as agent for the Erices when he sold the two apartment buildings. Petitioner stated at trial, after respondent had advised petitioner and the Court that the Erices' 1977 and 1978 Federal income tax returns had been destroyed, that "the only proof I have, unfortunately, is what the Respondent has submitted." He did not call either Michael or Robert Erice to testify, or present any documentation showing that an agency relationship existed between the Erices and himself. To the contrary, petitioner admitted, at trial, that his agency relationship with the Erices was not directly established in any written agreement or other document. Petitioner's testimony that he served as the Erices' agent in selling the apartment buildings lacks credibility. [3] At trial, petitioner failed to assert his claim that he transferred his leasehold interests in the *647 two apartment buildings to the Erices for a 100-percent fee interest in a third property in settlement of the 1977 lawsuit he filed against the Erices. To the contrary, petitioner stated, when questioned about his 1977 lawsuit with the Erices, that "We just amiably settled it, and said fine, you know, * * * the property was yours. I couldn't deny the fact that the property was theirs. So they had a right to sell it and, therefore, that's what happened." *648 The taxpayer bears the burden of proving basis for the purpose of calculating gain or loss on the sale of the property where the Commissioner determines that a taxpayer's basis in property is zero (or virtually zero). Counts v. Commissioner, 42 T.C. 755, 760 (1964); Estate of Nazarian v. Commissioner, T.C. Memo 1989-179. Although we are not persuaded that petitioner acted as the Erices' agent in selling the apartment buildings, we do not accept respondent's determination that petitioner received properties with a substantial value for nominal consideration from his former in-laws or that the apartment buildings appreciated to such an extent in less than 9 months. Inasmuch as the Stolis statements on the indentures by which petitioner received the apartment buildings certify the "actual" and "precise" consideration, we accept these statements as persuasive evidence of petitioner's costs for the apartment buildings. The credibility of these statements is supported by the imprints of the Pennsylvania Department of Revenue's Realty Transfer Tax stamp and the notations of the Municipal Transfer Tax Collector as to Municipal Transfer Tax paid. *649 According to Pennsylvania law in effect at the time of the conveyances Every person who makes, executes, delivers, accepts or presents for recording any document or in whose behalf any document is made, executed, delivered, accepted or presented for recording, shall be subject to pay * * * a State tax at the rate of one per cent of the value of the property represented by such document, which state tax shall be payable at the time of making, execution, delivery, acceptance or presenting for recording of such document. [Pa. Stat. Ann. tit. 72, sec. 8102-C (1990).]
At the time of conveyance, "value" was deemed to be the equivalent to the actual consideration, "In the case of any document granting, bargaining, selling or otherwise conveying any land." Pa. Stat. Ann. tit. 72, sec. 8101-C (1990). Thus, the Pennsylvania Department of Revenue and the Municipal Transfer Tax Collector, by accepting $ 205 and $ 221 as the Realty Transfer Taxes due on the Erices' conveyances to petitioner of the South High Street and West Union Street apartment buildings, accepted $ 20,500 and $ 22,100, respectively, as the actual consideration petitioner paid for the apartment buildings. [4] We are *650 persuaded that the consideration shown by the Stolis statements on the indentures, corroborated by the imprints and notations of the transfer tax authorities, was petitioner's cost for the apartment buildings, and therefore his basis under section 1012. [5]
*651 By reason of the foregoing, petitioner's basis for the apartment buildings and short-term gain realized on his sales of the apartment buildings are as stated in our ultimate findings of fact (supra p. 7). II. Child Care Credit
During 1978, section 44A[6] generally allowed a credit of 20 percent for expenses incurred for the care of dependent children outside the home, provided such expenses were incurred to enable the taxpayer to be gainfully employed. Section 44A restricted the taxpayer to a maximum expense of $ 4,000 in computing the credit for two or more children for 1978, thereby limiting the credit to $ 800. On the Form 2441 (Credit for Child and Dependent Care Expenses) petitioner filed with his 1978 Federal income tax return, he claimed that during 1978 he made child care payments to Agee of $ 6,760. Petitioner claimed the maximum $ 800 child care credit on Form 2441 and lines *652 40 and 46 of his 1978 Federal income tax return. During 1978, petitioner was employed as an accountant working a 9-to-5 schedule. Petitioner employed Agee as a child care provider during 1978. Agee's responsibilities included picking up petitioner's children after school, taking them to her house in Camp Hill, Pennsylvania, preparing dinner for them, and looking after them until petitioner picked them up after he finished work. Petitioner's testimony on the amounts he paid Agee for child care during 1978 was equivocal. [7] He also failed to provide documentary evidence to substantiate the amounts he paid Agee. We are nevertheless persuaded that petitioner did make payments of at least $ 4,000 to Agee for child care during 1978. Langlois v. Commissioner, T.C. Memo 1988-415, affd. without published opinion 886 F.2d 1316 (6th Cir. 1989). Accordingly, we sustain petitioner's claim to child care credit in the amount of $ 800. *653 III. Negligence Addition
Section 6653(a) provides that if any part of an underpayment is due to negligence or intentional disregard of rules and regulations, an amount equal to 5 percent of the underpayment shall be added to the tax. Negligence has been defined as a lack of due care or failure to do what a reasonable and ordinarily prudent person would do in a similar situation. Neely v. Commissioner, 85 T.C. 934, 947 (1985). In determining whether a taxpayer was negligent or intentionally disregarded the rules and regulations, it is appropriate for the Court to consider the taxpayer's experience and knowledge. Whitaker v. Commissioner, T.C. Memo 1988-418. Petitioner has the burden of proving that the addition to tax under section 6653(a) does not apply. Bixby v. Commissioner, 58 T.C. 757 (1972); Rule 142(a). We find that petitioner has not met his burden of proof. We have found that petitioner sold the apartment buildings to Shur and the Snyders for his own benefit. Petitioner thereby realized short-term capital gain that he did not report on his 1978 Federal income tax return. Petitioner was employed *654 as an accountant during the taxable year at issue. He was therefore aware of his obligation to report his gain from the sales of the two apartment buildings. A reasonable and ordinarily prudent individual with an accounting background would have reported the gain derived from these transactions. Petitioner's failure to report his gain on these transactions amounted, at the very least, to negligence and may well have amounted to intentional disregard of the Federal income tax rules and regulations that applied to this situation and defined his obligations thereunder. Respondent's determination of the additions to tax under section 6653(a) to the deficiencies determined in this case is sustained. To reflect the foregoing and respondent's concessions, Decision will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, section references are to the Internal Revenue Code of 1954 as in effect for 1978, and Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. We do not know whether the parties' failure to bring these statements to our attention was due to inadvertence or the inconsistency of these statements with their respective positions.↩
3. We note that petitioner's credibility is suspect as he has been convicted of crimes involving "dishonesty or false statement," within the meaning of Fed. R. Evid. 609(a)↩. Petitioner pleaded guilty in the U.S. District Court for the Middle District of Pennsylvania to six counts of filing false claims for Federal income tax and employers' tax refunds and four counts of mail fraud arising from his filing of false claims for employment taxes and unemployment compensation from the Pennsylvania Department of Labor and Industry, Bureau of Employment Security. Petitioner committed the foregoing crimes between 1979 and 1983.
4. We have rejected a variety of other possibilities in concluding that petitioner acquired the apartment buildings with some other cost basis. Among these rejected possibilities are that: (1) Petitioner received the apartment buildings under the leasehold options; (2) petitioner received the apartment buildings as part of a settlement of the lawsuit concerning his rights under the leasehold options; or (3) petitioner received the buildings in settlement of marital property rights.↩
5. There is no evidence in the record of who paid the realty transfer taxes on the recording of the indentures. We are therefore not called upon to decide whether petitioner was entitled to deduct these taxes in computing taxable income or to take them into account in computing his gain realized on the disposition of the apartment buildings.↩
6. Sec. 44A↩ was redesignated sec. 21 by the Tax Reform Act of 1984. Sec. 471(c)(1), Pub. L. 98-369, 98 Stat. 826.
7. Petitioner amended his testimony that he paid Agee $ 100 per week to $ 125 per week after the Court noted that $ 100 per week amounted to no more than $ 5,200 per year.↩